IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**CHARLES FRANKLIN BRATTEN, III,**

*Plaintiff*,

v.

Civil No.: **1:25-cv-03351-JRR**

**CITIBANK, N.A.,** *et al.*

*Defendants*

**MEMORANDUM OPINION**

Pending before the court is Defendant Citibank, N.A.'s ("Citibank") Motion to Compel Arbitration and Stay Proceedings. (ECF No. 15, the "Motion.") No hearing is necessary. Local Rule 105.6 (D. Md. 2025).

**I.      BACKGROUND AND UNDISPUTED FACTS**

Except where indicated, the following facts are undisputed. Plaintiff applied for a Citibank credit card account on November 24, 2022, which included an arbitration agreement (the "Agreement"). Plaintiff opened the account for the purpose of making a balance transfer of $8000 to pay down another credit card he had. Citibank erroneously failed to complete the transfer and instead sent $8000 to a different account; in other words, Citibank did not complete the transaction as Plaintiff directed. Despite the fact that Citibank sent the money to another account holder (*i.e.*, not Plaintiff and not his other credit card company), Citibank issued a statement to Plaintiff showing a balance due that included the $8000 neither he nor his other credit company ever received. Thereafter, Bratten took great pains to try to rectify Citibank's mistake to no avail. This mess culminated in Citibank suing Plaintiff in Maryland state district court in Wicomico County for the unpaid balance it asserted Plaintiff owed. Plaintiff won and judgment was entered against Citibank and in favor of Plaintiff.

After winning its judgment against Citibank, Plaintiff sued Citibank in the Circuit Court for Wicomico County in August 2025; Citibank removed the action to this court. In his Complaint, Plaintiff alleges, *inter alia*: "Citibank furnished information to the consumer reporting agencies Equifax, Experian, and Trans Union (collectively 'CRAs')," which Plaintiff alleges form the basis for his claims set forth in his Complaint. (ECF No. 5 at ¶ 36.) The Complaint sets forth four counts: 1) Count I for violation of Maryland Consumer Debt Collection Act (against Citibank only); 2) Count II for violation of the Maryland Consumer Protection Act (against Citibank only); 3) Count III for violation of the Fair Debt Collection Practices Act (against Defendant Tenaglia & Hunt, P.A. only);[1] and 4) Count IV for violation of the Fair Credit Reporting Act (against Citibank only).

Prior to the Motion, on October 16, 2025, Citibank filed an Answer to the Complaint, which makes express reference to the Agreement and asserts: "In responding to the Complaint, Citibank does not waive, and expressly reserves its right to seek to compel arbitration of all claims asserted by Plaintiff pursuant to the agreement governing Plaintiff's account with Citibank. Citibank expressly reserves, and does not waive, its right to arbitrate under the parties' agreement." (ECF No. 7 at p. 1.) Citibank filed the instant Motion the following month. In its Motion, Citibank seeks an order compelling arbitration of Plaintiff's claims against it and staying this action as against Citibank pending completion of the arbitration.

The Agreement, set forth at Exhibit 2 to the Declaration of Kelly Booth (a Citibank employee of approximately 32 years with personal knowledge of Citibank credit card related

---

[1] Plaintiff alleges Defendant Tenaglia & Hunt, P.A., is a "debt collection law firm" (ECF No. 5 at p. 5) that took certain action on behalf of Citibank not relevant to the Motion. Tenaglia & Hunt is not a movant and has filed no papers regarding the Motion.

business practices) (*see* ECF Nos. 15-3, 15-5), includes a permissive binding arbitration agreement

that provides in relevant part:

> **Covered claims**
>
> ☐ **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
>
> ☐ **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim**.
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

(ECF No. 15-5 at p. 13.)[2]

As to waiver, the Agreement provides:

> Arbitration may be requested at any time, even when there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor Citibank waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit.

*Id.*

Regarding applicable law, the Agreement explains: "This arbitration provision is governed

by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will

---

[2] Page references are to CM/ECF pagination.

allow" and "[f]ederal law and the law of South Dakota govern the terms and enforcement of this Agreement." *Id.* at pp. 13-14.

## II.   **APPLICABLE LAW**

Arbitration agreements are to be interpreted and enforced as would be any other contract. Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (providing that that § 2 of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts"). When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the FAA entitles the defendant to file an application to stay the litigation. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

South Dakota's statute governing credit cards provides in relevant part that "[u]se of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card . . . ." S.D. Codified Laws § 54-11-9, *Creation of contract between cardholder and issuer*; *see Cayanan v. Citi Holdings, Inc.,* 928 F. Supp. 2d 1182 (S.D. Cal. 2013) (applying South Dakota law and holding that use of credit card effectuates acceptance of arbitration agreement within credit card agreement). Therefore, under South Dakota, Plaintiff's use of the card, here for the intended balance transfer, constituted acceptance of the terms of the Agreement.

As the United States Supreme Court recently explained:

> The FAA was enacted in response to judicial hostility to arbitration.
> Section 2 of the statute makes arbitration agreements "valid,

> irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As we have interpreted it, this provision contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to "any contract."

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50, *reh'g denied,* 143 S. Ct. 60 (2022) (footnote omitted).

Sections 3 and 4 of the FAA "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Further, the Supreme Court has explained that the FAA promotes a "liberal federal policy favoring arbitration agreements" and that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 24. Importantly, when parties have entered a valid and enforceable agreement to arbitrate their disputes and the dispute at issue is within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms. 9 U.S.C. §§ 3, 4.

## III.    ANALYSIS

As set forth above, there is no question the parties' entered the Agreement. Further, the plain language of the Agreement covers Plaintiff's Counts I through III against Citibank for state and federal statutory claims based on Plaintiff's allegations that Citibank engaged in conduct related to his credit account that, *inter alia*, had an adverse effect on his credit and amounts to unlawful debt collection on the account. There can be no question that credit card agreements,

5

and use of and collection on credit accounts—especially as between citizens of different states, *see* ECF No. 7 at ¶¶ 3-5—affect and involve commerce, including interstate commerce.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The Supreme Court recently held that the structure and purpose of the FAA compel district courts to stay proceedings when a valid arbitration agreement applies.  *Smith v. Spizzirri*, 601 U.S. 472, 476–477 (2024) ("When § 3 says that a court "shall . . . stay" the proceeding, the court must do so.").

Plaintiff argues Citibank waived its right to arbitrate this action because it initiated a collection action in Wicomico County against Plaintiff.  The court disagrees.  To begin, as set forth above, the Agreement expressly provides as follows:

> Arbitration may be requested at any time, even when there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor Citibank waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit.

and

> We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

(ECF No. 15-5 at p. 13.)

In addition to the language of the Agreement, Citibank's answer to the Complaint placed Plaintiff (and the court) on notice that Citibank reserved, and did not waive, its entitlement to enforce the Agreement by virtue of its answer (ECF No. 7 at p. 1); then a month later, it filed the Motion.  Plaintiff has been on notice from the start of Citibank's presence in this action that it considers the Agreement applicable and that it reserved its right to invoke it.  Further, while not a Plaintiff's burden to demonstrate, the court discerns no prejudice to Plaintiff insofar as its rights and entitlements in this action.  And, contrary to Plaintiff's assertion, Citibank's Wicomico County collection action is not contrary to its entitlement to arbitrate the instant action.  The subject of that action, while related by virtue of its connection to Plaintiff's Citibank credit account, did not require or involve litigation or resolution of the same allegations, issues, or claims Plaintiff asserts in his Complaint here.

Further, the court disagrees with Plaintiff's assertion (by way of his citation to *Cain v. Midland Funding, LLC,* 452 Md. 141 (2017)) that had Citibank "had not pursued its . . . collection action, [plaintiff's] current claims would not exist;" and therefore, "the claims are part of 'one basic issue.'"  (ECF No. 17 at p. 4, citing *Cain,* 452 Md. at 158-59.)  According to the Complaint, Citibank engaged in the alleged conduct that forms the premise of Plaintiff's claims based on its position that Plaintiff had an unpaid balance due; whether or not Citibank chose later to sue Plaintiff on that (asserted) balance due has nothing to do with Plaintiff's complaint that Citibank caused him harm by its alleged wrongful collection activity all of which is alleged to have occurred before Citibank instituted the Wicomico County collection action, which was filed on or about July 30, 2024.  (*See* ECF No. 5 at ¶¶ 23-24, alleging Plaintiff was denied an auto loan in September 2023 due to Citibank's wrongful report that his account was delinquent.)

IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion will be granted.


March 12, 2026                                                                    /S/

                                                                    _____
                                                                    Julie R. Rubin
                                                                    United States District Judge

8