**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**CHARLES FRANKLIN BRATTEN, III,**

***Plaintiff,***

**v.**

**CITIBANK, N.A., *et al.*,**

***Defendants***

**Civil No.: 1:25-cv-03351-JRR**

# MEMORANDUM OPINION

Pending before the court is Defendant Tenaglia & Hunt, P.A.'s ("T&H") Motion to Compel Arbitration and Stay Proceedings. (ECF No. 31, the "Motion.") No hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

### A. Factual Background

Plaintiff Charles F. Bratten applied for a Citibank credit card account in November of 2022. (ECF No. 5 ¶ 9.) The credit card agreement (the "Agreement") includes a permissive binding arbitration clause, which provides in relevant part:

> **Covered claims**
>
> ☐ **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").
>
> ☐ **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim**.
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders

> or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

(ECF No. 32 at p. 12) (emphasis in original).

As to waiver, the Agreement provides:

> Arbitration may be requested at any time, even when there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor Citibank waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit.

*Id.* Regarding applicable law, the Agreement explains: "This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow," *id.* at 12, and "[f]ederal law and the law of South Dakota govern the terms and enforcement of this Agreement." *Id.* at 13.

Plaintiff opened the account for the purpose of making a balance transfer of $8,000 to pay down another credit card. (ECF No. 5 ¶ 11.) Plaintiff alleges that Citibank erroneously failed to complete the transfer as directed and, instead, sent $8,000 to a different account held by a different individual. *Id.* ¶ 13. Plaintiff alleges that despite the fact that Citibank sent the money to another account holder (*i.e.*, not Plaintiff and not his other credit card company), Citibank issued a statement to Plaintiff showing a balance due that included the $8,000 neither he nor his other credit company ever received. *Id.* ¶¶ 16–17. Plaintiff alleges he took great pains to try to rectify Citibank's mistake to no avail. *Id.* ¶¶ 18–22. This mess culminated in Citibank filing a collection action against Plaintiff in Maryland's state district court for Wicomico County for the unpaid balance it asserted Plaintiff owed. *Id.* ¶ 26. Citibank retained T&H as counsel in that action, and T&H litigated on Citibank's behalf. (ECF No. 31-1 at p. 2;

ECF No. 5 ¶ 31). Plaintiff won and final judgment was entered against Citibank and in favor of Plaintiff. (ECF No. 5 ¶¶ 29–30.)

Following entry of judgment in Plaintiff's favor in the collection action, T&H, acting on behalf of Citibank, filed a Notice of Dismissal without Prejudice in the state district court. (ECF No. 31-1 at p. 2; ECF No. 5 ¶ 31.) Plaintiff alleges this filing was improper pursuant to Maryland Rule 3-306(a) (titled "Judgment on Affidavit"). (ECF No. 5 ¶ 31 n.1.) Plaintiff further alleges that Citibank, through T&H, improperly sent the Notice of Dismissal directly to him despite its awareness that Plaintiff was represented by counsel. (ECF No. 5 ¶ 33.) Citibank's Notice of Dismissal was eventually stricken by the state district court on March 14, 2025. (ECF No. 31-1 at p. 2; ECF No. 5 ¶¶ 34–35.) After winning judgment against Citibank, Plaintiff sued Citibank and T&H in the Circuit Court for Wicomico County on or about August 19, 2025. (ECF No. 1 ¶ 1). Citibank removed the case to this court on October 9, 2025. (ECF No. 1.)

Plaintiff's Complaint sets forth four counts, only one of which (Count III) is brought against Defendant T&H.[1] (ECF No. 5 ¶¶ 71–80.) Count III alleges that T&H violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"). *Id.*; 15 U.S.C. §§ 1692, *et seq.* Specifically, Plaintiff alleges that T&H violated the FDCPA by 1) "sending a notice of dismissal without prejudice directly to Plaintiff[;]" 2) "misstating the amount and legal status of the debt in the collection lawsuit[;]" 3) "using a threat to take action that could not legally be taken" by attempting to dismiss the lawsuit without prejudice after judgment was entered; and 4) "using a false representation in the collection of a debt." *Id.* ¶¶ 75–78. Plaintiff alleges that T&H's alleged misrepresentations were material because they were of the type that would influence a consumer's reaction to collection efforts. *Id.* ¶ 79.

---

[1] Following this court's order granting Defendant Citibank's Motion to Compel Arbitration and Stay Proceedings, this case proceeded on this count only. (ECF No. 30.)

Following removal, Citibank and T&H timely filed Answers to Plaintiff's Complaint on October 16 and November 13, 2025, respectively. (ECF Nos. 1, 7, 11.) Although Citibank's answer prominently asserted on the first page and elsewhere that Plaintiff's claims against it are subject to binding arbitration and reserved the right to seek to compel some, ECF No. 7, T&H's answer filed 28 days later did not mention arbitration at all—including in the list of 16 affirmative defenses. (ECF No. 11.) On November 19, 2025, Citibank filed a Motion to Compel Arbitration and Stay Proceedings. (ECF No. 15.) While that motion was pending, T&H participated in the pretrial process with Plaintiff and Citibank, including the production of a Joint Initial Status Report ("JISR") filed on November 28, 2026. (ECF No. 16.) In the JISR, Plaintiff and T&H represented to the court that scheduling order modifications were necessary "in light of the relative complexity of the case, the need for third party discovery and to accommodate counsel's existing commitments." *Id.* at 2. Plaintiff and T&H additionally requested referral to a settlement conference[2] "with a target mediation date in March 2026, to ensure that written discovery is substantially complete before mediation." *Id.* at 3. At the time they filed the JISR, T&H and Plaintiff had "already made discovery requests." *Id.*

Five days after Citibank filed its Motion to Compel Arbitration and Stay Proceedings, on November 24, 2025, T&H served Rule 33 and 34 discovery—interrogatories and requests for production—on Plaintiff. (ECF Nos. 34-1, 34-2.) T&H issued 31 requests for production—including, *inter alia*, all documents that "tend to support or refute" several specific aspects of Plaintiff's FDCPA claims; "all documents and/or communications concerning Plaintiff's monthly credit card payments to Defendants from November 2022 up to the present, including but not limited to any receipts, confirmation e-mails, notices or statements, and/or any other evidence that may be used to show proof of payment," ECF No. 34-1 at p. 9; "true and accurate

[2] The JISR refers interchangeably to a "settlement conference," "ADR" (alternative dispute resolution) and "mediation."

copies of all documents, photographs, videos, evidence, exhibits, and tangible objects that Plaintiff plans or intend [sic] to introduce at any deposition, hearing, or trial in this matter[,]" *id.* at 6; all documents, including medical records, pertaining to alleged injury and damages, *id.* at 7–9; and "true and accurate copies of the documents related to the findings or opinions of each person whom Plaintiff intends to call as an expert witness at trial in this matter." *Id.* at 7. In its 19 interrogatories, T&H sought all manner of information regarding Plaintiff's FDCPA claim, damages sought, a description of relevant documents, facts witnesses, expert witnesses, and the like. (ECF No. 34-2.)

**B. Procedural Posture**

By memorandum opinion and order issued March 12, 2026, this court granted Citibank's Motion to Compel Arbitration and Stay Proceedings. (ECF Nos. 29–30.) As a result, this action was stayed as to Citibank only and proceeded as to T&H on Count III. (ECF No. 30.) On April 2, 2026, T&H filed the instant Motion to Compel Arbitration and Stay Proceedings. (ECF No. 31.) Plaintiff filed a timely Response in Opposition. (ECF No. 34.)

## II. LEGAL STANDARDS

**1. The Federal Arbitration Act**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements are to be interpreted and enforced as any other contract. 9 U.S.C. § 2 (stating that arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (noting that § 2 of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts"). When a party who has agreed to arbitrate a dispute initiates a judicial action instead, the FAA entitles the defendant to

file an application to stay the litigation pending arbitration. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022). As the Supreme Court has explained:

> The FAA was enacted in response to judicial hostility to arbitration. Section 2 of the statute makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As we have interpreted it, this provision contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to "any contract."

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50, *reh'g denied,* 143 S. Ct. 60 (2022) (footnote omitted).

Sections 3 and 4 of the FAA "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Further, as the Supreme Court has explained, the FAA promotes a "liberal federal policy favoring arbitration agreements" and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 24. That presumption of arbitrability applies only to challenges to the scope of an arbitration agreement, not to its validity. *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022). Still, when parties have entered a valid, enforceable agreement to arbitrate their disputes and the dispute at issue is within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings and compel arbitration in accordance with the agreement's terms. 9 U.S.C. §§ 3, 4.

Reviewing courts address two inquiries when evaluating an arbitration agreement: 1) whether there is a valid, enforceable arbitration agreement between the parties; and 2) whether the dispute falls within the scope of that agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (noting that the reviewing court "must resolve any issue

that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce.”). And, although the FAA institutes a “liberal federal policy” in favor of arbitration, *Moses H. Cone Mem’l Hosp.*, 460 U.S. at 24, it does not “alter background principles of state contract law regarding the scope of agreements” including the questions of “‘who is bound by them’ and who can enforce them.” *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 287 (4th Cir. 2023) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). Importantly, because “[a]rbitration is a matter of contract,” general principles of contract interpretation apply subject to an applicable choice of law provision where one exists. *Coady*, 32 F.4th at 291; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) (stating that a court deciding whether the parties agreed to arbitrate a particular dispute should generally apply “ordinary state-law principles that govern the formation of contracts”); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 59 (1995) (reasoning that a “choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.”).

**2. Choice of Law**

“[F]ederal courts apply the choice of law rules of the state in which the court sits.” *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 590 (D. Md. 2019). Under Maryland law, the law of the state where the contract was formed applies unless the parties’ agreement has a choice of law clause stating otherwise. *Id.* Here, the Agreement provides that “[f]ederal law and the law of South Dakota” govern the “terms and enforcement” of the Agreement. (ECF No. 32 at p. 13.)[3] Although the FAA is the federal authority governing

[3] The United States District Court for the Eastern District of North Carolina recently considered the same choice of law clause in Citibank’s arbitration agreement:

> Where, as here, jurisdiction is based on federal question, courts apply federal common law, which honors the parties’ choice of law unless “‘the chosen state has no substantial relationship to the parties or the transaction and there is no

the instant arbitration clause, it generally coexists with "ordinary state law principles that govern the formation of contracts." *First Options of Chicago, Inc.*, 514 U.S. at 944.

For reasons unknown to the court, neither party invokes South Dakota law or mentions the Agreement's choice of law provision.[4] While choice of law provisions may be waived,[5] neither side has raised that issue either[6] and the court will not take it up *sua sponte*. Thus, the court applies South Dakota law per the Agreement. Regardless, even were the court to find the parties waived the choice of law provision, the outcome is the same under Maryland law.

---

> other reasonable basis for the parties' choice' or 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue' and that state would be the state of the applicable law in the absence of an effective choice-of-law by the parties."

*Snow v. Citibank, N.A.*, No. 5:14–CV–59–FL, 2015 WL 799543 at *5 (E.D.N.C. Feb. 25, 2025) (quoting *Daugherty v. Experian Info. Sols., Inc.,* 847 F. Supp. 2d 1189, 1195 (N.D. Cal. 2012)). Recognizing that Citibank has "a substantial relationship" to the state and the transaction at issue, the court adopts the same approach here.

[4] Besides Supreme Court precedent, T&H relies on Fourth Circuit and Maryland authorities. (ECF No. 31-1 at pp. 5–6.) Specifically, T&H invokes Maryland state law in asserting the arbitration agreement between Plaintiff and Citibank is valid. *Id.* at 6 ("[i]n Maryland, when interpreting contracts, courts apply the 'objective test' . . . "). Plaintiff similarly relies on Fourth Circuit and Maryland jurisprudence in his opposition. (ECF No. 34 at pp. 2–4.)

[5] Federal courts have recognized that choice of law provisions may be waived by parties who rely on substantive law from other jurisdictions during litigation. *See, e.g.*, *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781 (4th Cir. 2023) ("[a] party abandons any claim that a different state's law should govern the action if it fails to raise that issue before or during trial."); *Grecon Dimter, Inc. v. Horner Flooring Co., Inc.*, 114 Fed. App'x 64, 66–67 (4th Cir. 2004) (collecting cases); *Fid. & Deposit Co. of Md. v. Krebs Eng'rs,* 859 F.2d 501, 504 (7th Cir. 1988) (finding waiver when party relied solely on Wisconsin law during litigation despite existence of a California choice of law provision in the contract at issue); *Cargill, Inc. v. Charles Kowsky Res., Inc.,* 949 F.2d 51, 55 (2d Cir. 1991) (finding waiver of Massachusetts choice of law provision when parties relied on New York law in summary judgment pleadings). Waiver, as discussed in more depth below, is the "intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). When assessing whether a contract right has been waived, courts look to the "actions of the person who held the right." *Id.* The Fourth Circuit has recognized waiver of this kind in circumstances where there is consistent use of a different body of substantive law by the parties and by the court. *See Chorley Enters., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553, 563 n.11 (4th Cir. 2015) (applying Maryland law despite a Texas choice of law provision where the parties and the district court applied and cited Maryland law).

[6] Here, unlike *Chorley Enterprises*, *supra*, Citibank addressed the choice of law provision while Plaintiff and T&H have not. 807 F.3d at 563 n.11. In its Motion to Compel Arbitration and Stay Proceedings (ECF No. 15), Citibank expressly invoked the choice of law provision in the Agreement and relied upon South Dakota authority. (ECF No. 15-1 at pp. 21–22.) In opposition to Citibank's motion, Plaintiff chiefly relied on Maryland law and did not address the choice of law provision. (ECF No. 17.) Indeed, Citibank raised this discrepancy in its reply. (ECF No. 22 at pp. 2, 7.) Further still, in its memorandum opinion deciding Citibank's motion, the court recognized the choice of law provision and applied South Dakota law accordingly. (ECF No. 29 at p. 4.) The parties are obviously aware of the choice of law issue provision and neglect to address it.

**3. South Dakota State Law**

Echoing federal arbitration jurisprudence, under South Dakota law "[t]here is an overriding policy favoring arbitration when a contract provides for it." *Nature's 10 Jewelers v. Gunderson*, 648 N.W. 2d 804, 806 (S.D. 2002); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812, 816 (S.D. 2002) (citing *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W. 3d 494, 498 (Tex. App. 2000) (stating "a court should not deny a motion to compel arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."). When determining the plausible scope of an arbitration agreement, South Dakota courts apply principles of contract law with the goal of "ascertain[ing] and giv[ing] effect to the intention of the parties." *Coffey v. Coffey*, 888 N.W. 2d 805, 808 (S.D. 2016) (quoting *Malcolm v. Malcolm,* 365 N.W. 2d 863, 865 (S.D. 1985)). To do that, South Dakota courts "examine the contract as a whole and give words their 'plain and ordinary meaning.'" *Id.* (quoting *Gloe v. Union Ins. Co.,* 694 N.W. 2d 252, 260 (S.D. 2005)).

## III. ANALYSIS

T&H argues that because it is an agent of Citibank, it is also an intended beneficiary of the Agreement, and may therefore invoke the right to arbitrate because Plaintiff's claim falls within the scope of the Agreement. (ECF No. 31-1 at pp. 6–7.) Plaintiff counters that only signatories to the Agreement may invoke the arbitration provision. (ECF No. 34 at pp. 2–4.) Plaintiff additionally argues that even if T&H could compel arbitration, it waived the right to do so. *Id.* at 5–6. The court's first task is to determine whether Plaintiff's dispute falls within the language of the Agreement, and, if so, whether T&H may invoke the Agreement's arbitration clause in view of its relationship to Citibank. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). If both questions are answered in the affirmative, the court will then proceed to address the question of whether T&H waived its right to arbitration.

As the party opposing arbitration, Plaintiff bears the burden of overcoming the FAA's strong policy in favor of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 22 (1983). As explained below, the court finds that Plaintiff's claim falls within the scope of the Agreement, and that as an agent of Citibank T&H was permitted to move for arbitration pursuant to the Agreement; however, T&H waived the right to compel arbitration.

**A. Scope of the Arbitration Agreement**

Plaintiff argues that while the language of the Agreement is broad with respect to the claims that may be arbitrated, it does not extend the right to compel arbitration to all parties involved with those claims. (ECF No. 34 at pp. 3–4.) Rather, the right to compel arbitration, Plaintiff argues, is limited to the signatories to the Agreement. *Id.* The court agrees that the plain language of the Agreement limits the right to arbitrate to Citibank and Plaintiff, but applicable principles of agency law and equitable estoppel permit T&H to invoke arbitration (in the absence of waiver).

**1. The Claim**

The arbitration provision in the Agreement applies to "all Claims . . . no matter what legal theory they're based on" including "contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law." (ECF No. 32 at p. 12.) It extends to claims "regarding past, present, or future conduct; and [c]laims made independently or with other claims" as well as "[c]laims made by or against anyone connected with us or you or claiming through us or you."[7] *Id.*

The plain language of the Agreement strongly militates in favor of finding that Plaintiff's FDCPA claim is subject to arbitration. *Coffey v. Coffey*, 888 N.W. 2d 805, 809 (S.D.

[7] The Agreement, as the parties note, also extends to claims "by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/ subsidiary company." (ECF No. 32 at p. 12.) Although this portion refers to agents and other associated parties, its scope is limited to "someone" making a claim "through us or you[.]" Here, Plaintiff asserts a claim against a third party (T&H). T&H did not initiate this claim; rather, it has invoked the arbitration provision in response to Plaintiff's FDCPA claim. (ECF No. 31.) This portion of the arbitration provision is therefore not at issue on the instant Motion.

2016) (stating that under South Dakota law, courts must give words their plain and ordinary meaning); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812, 816 (S.D. 2002) (noting that "any doubts on whether a claim falls within the scope of an arbitration agreement are to be resolved in favor of arbitration."). The FDCPA claim, a statutory right of action, is grounded in T&H's alleged conduct during and after Citibank's collection action against Plaintiff and therefore falls within the broad language of the arbitration provision. (ECF No. 32 at p. 12) (including claims rooted in "statutory or regulatory provisions"). Further, Plaintiff's Count III qualifies as a claim "made . . . against anyone connected with" Citibank. *Id.* Thus, under South Dakota law, and construing any doubt in favor of arbitration, Plaintiff's claim is subject to arbitration under the Agreement.[8]

**2. The Parties' Relationships**

The parties' main point of contention is whether T&H is entitled to compel arbitration based on its relationship with Citibank and, thus, its connection to the Agreement. T&H argues that its attorney-client relationship with Citibank makes it an intended third-party beneficiary of the Agreement. (ECF No. 31-1 at p. 7.) Specifically, T&H argues it qualifies as "anyone connected with" Citibank under the arbitration provision. *Id.* Relying on authority from this district, Plaintiff disagrees and asserts that the Agreement here does not permit third parties to compel arbitration merely because T&H is (or was) Citibank's agent as counsel. (ECF No. 34 at p. 4.)

As mentioned, South Dakota courts begin with the plain meaning of a contract's text, and have expressly adopted the approach of "afford[ing] agents the benefit of arbitration agreements entered into by their principals." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812, 815 (S.D. 2002) (citing *Hirschfeld Prods. v. Mirvish,* 673 N.E. 2d 1232, 1233 (N.Y.

---

[8] The outcome is the same under Maryland law and arbitration agreement construction principles. *See, e.g.*, *Allstate Ins. C. v. Stinebaugh*, 374 Md. 631, 643 (2003) ("if an arbitration clause is unclear 'as to whether the subject matter of the dispute falls within the scope of the arbitration agreement,' the question should be left to the arbitrator") (quoting *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 107 (1983)).

1996)). Under South Dakota law, an agency relationship must have a "(1) manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking, and (3) the understanding of the parties that the principal is to be in control of the undertaking." *A.P. & Sons Constr. v. Johnson*, 657 N.W. 2d 292, 297 (S.D. 2003) (citing *Kasselder v. Kapperman*, 316 N.W. 2d 628, 630 (S.D. 1982)). "Whether an agency relationship has in fact been created depends upon the relations of the parties as they exist under their agreement or acts." *Dahl v. Sittner*, 429 N.W. 2d 458, 462 (S.D. 1988). Lawyers are "in effect a special agent limited in duty to the vigilant prosecution and defense of the rights of the client." *In re Discipline of Eicher*, 661 N.W. 2d 354, 365 (S.D. 2003); *see also Northwest Realty Co. v. Perez*, 119 N. W. 2d 114, 116 (S.D. 1963) ("[t]he attorney is in effect a special agent limited in duty to the vigilant prosecution and defense of the rights of the client and not to bargain or contract them away.")

T&H, retained by Citibank as counsel in underlying collection action, is clearly an agent of Citibank. The arbitration provision provides that "[y]ou or we" may arbitrate—and defines "you" as the "[t]he cardmember who opened the account," and "we" as "Citibank, N.A." (ECF No. 32 at pp. 12, 5.) Further, under applicable South Dakota law, the agency relationship between T&H and Citibank (in addition to the equitable considerations discussed *infra*) extends the arbitration right to T&H.[9] *Rossi Fine Jewelers,* 648 N.W. 2d at 815. Moreover, the plain language of the contract on its own favors T&H here; the arbitration provision includes "Claims made by or against anyone connected with us . . . ." (ECF No. 31-1 at p. 7.)

**3. Equitable Estoppel**

In addition to its consideration of agency, South Dakota courts permit non-signatories to enforce the terms of arbitration agreements "especially when all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted

[9] The result is the same under Maryland law. *See Kyere v. Durand*, 269 Md. App. 1, 32–33 (2026) (permitting appellees to invoke an arbitration clause because they were agents of a signatory to the agreement acting within the scope of that agency relationship).

misconduct by both the nonsignatories and one or more of the signatories to the contract." *Rossi Fine Jewelers*, 648 N.W. 2d at 815–16 (citing *MS Dealer Serv. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).[10] This is based on the principle that plaintiffs should not be able to circumvent arbitration by adding a non-signatory defendant to an action, or by subjecting agents of signatories to litigation while the principal may arbitrate. *Id.* Thus, equitable principles favor permitting non-signatory agents of signatories to benefit from arbitration as well.[11] *Id.*

Here, Plaintiff alleges that T&H made misrepresentations in the context of the collection action and the debt Citibank alleged Plaintiff owed. (ECF No. 5 ¶¶ 73–78). Specifically, Plaintiff alleges that T&H misrepresented to Plaintiff that "Plaintiff actually owed Citibank money, that Citibank had evidence to support its claim, and that Citibank could legally dismiss the collection lawsuit[.]" *Id.* ¶ 78. Similarly, Plaintiff's allegations against Citibank expressly implicate T&H as part of the allegedly violative conduct. (ECF No. 5 ¶ 31) ("Citibank, through Tenaglia Hunt, filed a Notice of Dismissal Without Prejudice on February 12, 2025.").

Plaintiff's allegations plainly allege "substantially interdependent and concerted misconduct" on the part of T&H as counsel for Citibank. *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812, 815 (S.D. 2002). Further, Plaintiff's allegations that T&H misrepresented the nature of his debt and the strength of Citibank's corresponding legal action

[10] Maryland courts apply the same test. *Griggs v. Evans*, 205 Md. App. 64, 83 (2009). The Fourth Circuit similarly applies the doctrine of equitable estoppel when the signatory's claims "arise out of and relate directly to the written agreement," or "when the signatory raises allegations of substantially interdependent or concerted misconduct by the nonsignatory and one or more signatories to the contract." *Amer. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627, 627 n.3 (4th Cir. 2006) (citing *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005)).
[11] Maryland courts adopt similar reasoning. *See, e.g.*, *Schuele v. Case Handyman & Remodeling Servs.*, 412 Md. 555, 562 (2010); *Griggs*, 205 Md. App. at 82 n.5. The Fourth Circuit does as well. *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 286 (4th Cir. 2023) ("[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" those who are not parties to a written arbitration agreement may be eligible for relief under the FAA") (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).

against him implicate the attorney-client relationship between T&H and Citibank. (ECF No. 5 ¶¶ 31, 73–78.) That agency relationship places T&H under the direction of Citibank, necessarily making T&H's actions "interdependent" of and "concerted" with Citibank's. *Rossi Fine Jewelers*, 648 N.W. 2d at 815; *see also Northwest Realty Co.*, 119 N.W. 2d at 116 (noting that "an attorney who is clothed with no other authority than that arising from his employment . . . has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action."). In addition to the agency relationship between Citibank and T&H, Plaintiff's allegations satisfy South Dakota's test for application of equitable estoppel.[12] On that basis, and construing any remaining ambiguity in favor of arbitrality, T&H was, therefore, entitled to invoke the arbitration provision. *Rossi Fine Jewelers, Inc.*, 648 N.W. 2d at 816.

**B. Waiver**

If T&H intentionally relinquished or abandoned a "known right" to arbitration, it cannot enforce that right here. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). Plaintiff argues just that, asserting that T&H waived any right to compel arbitration. (ECF No. 34 at p. 5–6.) The court agrees.

"To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right[,]" and "seldom considers the effects of those actions on the opposing party." *Morgan*, 596 U.S. at 417. This analysis applies to waiver of arbitration clauses just as it does to other contractual rights; there are no "special, arbitration-preferring procedural rules." *Id.* at 418. As discussed, the Agreement's choice of law clause grounds the question of waiver in "[f]ederal law and the law of South Dakota." (ECF No. 32 at p. 13.) Under South Dakota law, the "dominant policy favoring arbitration" means "waiver cannot be lightly inferred." *Rossi Fine Jewelers, Inc.*, 648 N.W. 2d at 816. In order to find valid waiver of a contractual right,

[12] Applying Maryland contract principles yields the same result. *See supra* footnote 11.

there must be "conduct or activity inconsistent with the right to arbitration."[13] *Id.* The party holding the right must have "full knowledge of the material facts" at the time of the purported waiver. *A-G-E Corp. v. State*, 719 N.W. 2d 780, 787 (S.D. 2006) (quoting *W. Cas. and Sur. Co. v. Am. Nat. Fire Ins. Co.,* 318 N.W. 2d 126, 128 (S.D. 1982)).

When evaluating the question of waiver, South Dakota courts consider "delay and the extent of the moving party's trial-oriented activity." *Rossi Fine Jewelers*, 648 N.W. 2d at 815. This analysis is fact intensive. *See Hosp. Builders, Inc. v. Spokane S. Medical, LLC*, No. 1-20-CV-01017-CBK, 2020 WL 5969251 at *1 (D. S.D. Oct. 8, 2020) ("a contractual agreement to arbitrate is subject to waiver, depending on the facts."). In particular, the court weighs "the significance of the action taken in a judicial forum" and considers whether that action is "inconsistent with the right to arbitration." *Id.* Inconsistent conduct includes filing an answer without raising the right to arbitrate, sending or responding to discovery requests, engaging in motions practice, or certifying readiness for trial. *See Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W. 2d 643, 645 (S.D. 1991) (finding waiver where defendants took depositions, filed interrogatories and answers, sent requests for deposition, and certified readiness for trial); *Midwest AG Enter. v. Poet Invs.*, No. 08–4091, 2010 WL 2332717 at *17 (D. S.D. June 9, 2010) (finding waiver where defendants failed to raise an arbitration claim in their answer and engaged in discovery regarding contract at issue). Delay is also a relevant factor, but is not independently dispositive. *See Rossi Fine Jewelers*, 648 N.W. 2d at 815 (finding no waiver when party delayed by three to four months, unwilling to find waiver unless delay was paired with "extensive trial-oriented activity"). Filing an answer or engaging in discovery, without invoking the right to arbitrate, is a significant factor favoring waiver. *Midwest AG Enter.*, 2010

---

[13] The South Dakota Supreme Court lists a second prong of this test—"prejudice to the party claiming waiver." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812, 816 (S.D. 2002). Following the Supreme Court's decision in *Morgan v. Sundance*, 596 U.S. 411 (2022), however, the requirement of prejudice is no longer operative. *Id.* at 418 (rejecting the idea that the FAA's policy favoring arbitration permits federal courts to "invent special, arbitration-preferring procedural rules").

WL 2332717 at *17; *cf. Retsel Corp. v. NDN Collective*, No. 5:24-CV-05070, 2025 WL 1383215 at *6 (D. S.D. May 13, 2025) (finding no waiver when party "seasonably asserted the forum selection clause" in the disputed contract). Participating in discovery that would be duplicative with discovery conducted as part of arbitration also favors a finding of waiver. *See Tjeerdsma*, 466 N.W. 2d at 645 (finding waiver where defendants took depositions, issued interrogatories and requests for admission); *Midwest AG Enter.*, 2010 WL 2332717 at *17 (finding waiver in part because party participated in discovery production it knew would be duplicative of discovery in arbitration).

The case of *Tjeerdsma v. Global Steel Bldgs., Inc.,* provides particularly helpful guidance. 466 N.W. 2d at 645. In *Tjeerdsma*, the defendants answered the plaintiff's complaint without asserting their contractual right to arbitrate, took depositions, issued interrogatories, issued requests for admissions, and certified their readiness for trial. *Id.* The South Dakota Supreme Court reasoned that "[a]ll of this conduct is inconsistent with an arbitration defense." *Id.* Accordingly, the court found the defendants had waived their right to arbitrate. *Id.*; *A-G-E Corp.*, 719 N.W. 2d at 787 (quoting *Western Cas. and Sur. Co.,* 318 N.W. 2d at 128 (defining waiver as conduct "inconsistent with the existence of the right or of [the party's] intention to rely upon it[.]").

Here, Plaintiff argues that T&H's conduct, in the periods prior to and following the court's decision on Citibank's Motion to Compel Arbitration and Stay Proceedings, constitutes waiver of the right to arbitrate under the Agreement. (ECF No. 34 at pp. 5–6.) Indeed, in many ways T&H's conduct bears substantial similarity to the defendants in *Tjeerdsma*. As there, T&H filed an answer but did not raise the defense of arbitration or articulate any right to arbitrate (despite the fact that Citibank had done so a month earlier). (ECF Nos. 7, 11.) *See also Midwest AG Enter.*, 2010 WL 2332717 at *17 (finding waiver due to failure to raise arbitration defense in responsive pleading). Further, as outlined above, following removal and

continuing after Citibank filed its motion to compel arbitration, T&H participated in the production and filing of the JISR, including requesting a settlement conference with the court and modified deadlines to accommodate the "complexity of the case," and issued multiple forms of discovery, communicating its desire and intention to litigate toward trial. (ECF Nos. 16, 34-1, 34-2.)

Moreover, T&H was clearly on notice of the arbitration provision—as counsel for Citibank in the collection action, ECF No. 31-1 at p. 2, and having received Citibank's Answer and its Motion to Compel Arbitration and Stay Proceedings—yet elected to take substantial steps toward continued litigation and waited nearly six months after Citibank's motion to file its own. (ECF No. 11.) Indeed, even after Citibank moved to compel arbitration, T&H continued to actively litigate and engage in discovery for 134 days before filing its own Motion to Compel Arbitration and Stay Proceedings. (ECF Nos. 15, 31.) As mentioned, in the November 2025 JISR, T&H (jointly with Plaintiff and Citibank) expressly indicated a plan to continue engaging in discovery and schedule future deadlines around same. (ECF No. 16 at p.2.) And T&H's conduct required (by rule and order of court) that Plaintiff likewise engage in litigation and trial-oriented activities.

Mindful that "waiver cannot be lightly inferred,"[14] *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812, 816 (S.D. 2002), the court finds that T&H's continuous conduct over many months, and following the alert of Citibank's answer and motion to compel arbitration, is categorically inconsistent with an arbitration defense and clearly communicates

[14] Maryland courts apply a substantially identical analysis, leading to the same result. Under Maryland law, "[a] party may, by subsequent act or omission, waive its right to arbitration." *Gannett Fleming, Inc. v. Corman Construction, Inc.*, 243 Md. App. 376, 392 (2017). "An intention inconsistent with enforcement of the right to arbitration should be clearly established and should not be inferred from equivocal acts or language." *Id.* (citing *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 449 (1982)). "[A] right to arbitration may be waived if the party waits too long to assert the right to arbitration and instead 'engage[s] itself substantially in the judicial forum.'" *Id.* at 394 (citing *Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 141 (2001)). As described, T&H's conduct, both toward Plaintiff and the court, clearly communicates an intent to substantially engage in the "judicial forum." *Id.*

(and demonstrates) an intention to litigate. The court concludes that T&H waived its entitlement to invoke the right to arbitrate.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendant Tenaglia & Hunt, P.A.'s Motion to Compel Arbitration and to Stay Proceedings is denied.

October 28, 2026

/S/

Julie R. Rubin
United States District Judge